The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Eugene G. Daugherty presiding. Good morning. The court is calling case number 4-24-0956, Dominique Barahona v. Snowstar Corporation. I'm going to advise counsel that there are three members to this panel, but one was unavoidably unable to attend today. That judge will review a recording of this argument today and fully participate in our decision. Would counsel for the appellant please state your name for the record? Nicholas Ambigoness, B-I-G-O-N-E-S-S. And for the appellant? Laura Aramia, I-E-R-E-M-I-A. All right. Thank you. Mr. Ambigoness, you may proceed with your argument. May it please the court, we're here this morning appealing the decision of the judge in Rock Island County. This case involves a first-time skier, a gentleman who grew up in Florida and attended to a ski hill outside Rock Island. Mr. Barahona understood that there were risks to skiing. This was his first time, but he's a college student, kind of a bright kid. Understood that he was going to probably fall, probably crash into a snowbank. Maybe if he goes off the track, he might end up in some bushes or even worse, maybe a tree. But what he could not foresee was that there was a piece of machinery right off one of the runs that he might collide with. Isn't foreseeability, well, first of all, there's no dispute that he read and signed the liability waiver, is that correct? No dispute. So isn't foreseeability affected by the content of that? And it mentions specifically, among the other things that could be around, snow machine. It does. It does. So doesn't that make the location or that possibility foreseeable? Well, there were snowmaking machines visible from the top of the hill. They kind of ran all the way down the hill. Now, if there was a danger and what he could foresee while he was on the hill, if he veered off over there, that that would be a problem. But what he couldn't foresee was the fact that this snowmaking machine, which is about the size of a furnace with a pipe protruding from it, would be about between 7 to 10 feet off the run, 5 feet below the surface. So in this instance, where Mr. Barahona is coming down the hill and he sees a young kid veering in front of him, you know, I suppose a seasoned skier would have slalomed around the kid. This is Mr. Barahona's first time on skis. He falls down and he is sliding backwards, looking at the top of the hill. If he'd known, if it was foreseen that there was a piece of machinery with a pipe sticking out of it, he could have acted differently. Maybe it would have been better for him to nearly miss that child or maybe even bump that child, but he would have known not to go near there because he's going straight down onto a machine. Didn't he testify that he didn't have any control over his trajectory? He did not. Once he slipped and went down, he was kind of at gravity's mercy at that point. So how could he have controlled how he might react differently? Well, if he saw or would realize that there was a big machine right off the run, five feet below the surface, he wouldn't have veered that direction to avoid that child. I believe a reasonable person would say, I don't want any part of that hazard down there. I'm going to go the other way and if I bump this little kid or I scare him, so be it. But I am not going to go down there and get impaled by a piece of metal sticking out of that machine. So I know your client is an inexperienced, was an inexperienced skier, but he's already got more experience than I do. I've never skied. I'm right there with you, Judge. I can't help but think, though, that a snowmaking machine would be adjacent to the run, that there wouldn't be much point in putting it somewhere else. Well, I've seen ski snowmaking machines and it's like a big hose. They carry over a whole distance. If you're going to place that thing there, put a flag on it, like they do in the fire hydrants when it snows. Put something up there. There is no... I thought there was orange tape near the snowmaking machine, either around it or around a tree that was right next to it. Those were from photographs that were taken during the summer and the machine was all wrapped up. There were pictures taken immediately after this incident. Mr. Barahona was hospitalized for a significant period of time and he didn't retain counsel until six months later or what have you. So, those photographs don't accurately portray and that's why I didn't attach them. But the question that we're talking about here is, we're not jumping into the negligence arguments about whether they should have marked it with a flag or the like. The question is, does the waiver stand up? What does the waiver have to do beyond saying the specific thing that he collided with, which is a snowmaking machine? Does the waiver have to specify where every machine is, where every tree is, or is it sufficient to give a general alert? Well, you know, exculpatory clauses are strictly construed against the benefiting party because these clauses are not favored by the courts. They don't like the exculpatory clauses, even though it can be done, but they don't like, the courts do not like their shielding themselves from any liability whatsoever. Now, you hand a kid who's willing to put on the skis and go down a hill, it's a four-page document. It talks about everything under the sun, even vehicles. I don't know how a vehicle, I'm sorry, Judge. What is not clear, explicit, or unequivocal about the waiver? Well, from Mr. Barahona's point of view, the specific danger... Well, it's a matter of law. It's a matter of law. It's not his point of view. His point of view isn't relevant. What's relevant is, as a matter of law, what wasn't clear, explicit, unequivocal about the waiver? I think that if they said that snowmaking machines, visible or not visible from the ski run, maybe that gets his focus a little bit. I don't want to go anywhere near the edge of that. But that specific danger, I believe, Your Honor, is the fact that it's not visible from the ski run. You can see the tree. But that's what the order asked you at the very outset, that snowmaking machines were included within the waiver. They were, Judge, along with vehicles and everything else under the sun. They were just saying, we're not responsible for anything. Okay. This wasn't Telluride. This is outside of Rockford, right? Outside Rock Island. Rock Island. I'm sorry. So there's a specific area where there's snow, and that snow comes as a result of the snowmaking machines, right? I believe that there was also natural snow. February, I believe. But there's a run, and it has something bordering it. Yes. Yes. And he knows that what's producing all that is the snowmaking machine. And there are snowmaking machines that go down, all the way down the run, correct? Yeah, but they're visible, and they're towers. Well, that's why they put a provision in the contract that says you need to be aware that there's snowmaking equipment. And he was aware of the visible ones, but he had no idea that this heavy piece of machinery with pipes protruding it were so close to the run. I just don't know where else it would be. If they had backed it off away from the run, or maybe put it at the ‑‑ he hadn't progressed very far down that hill. They could have put it at the top of the hill and have it blowing down. I'm hardly a skiing architect. But to put this thing 10 feet below, 10 feet off the ski run itself with pipes protruding from it, I think that if they had said, well, you know, there are some machines you won't be able to see until you go off the run. And by the way, they have pipes protruding from them. He might have said, I'm not signing this thing. When you say below, do you mean downhill? Down, the ski run runs down the hill and then to the side there's big drop offs. Sure. But below, it's not like below the surface. It's not hidden in that way. It's just downhill as I would assume everything ahead of him would be. No, Judge, I believe that the run, everything sloped away to the side from the run. It was down below. He couldn't see it. If you had stayed on the run and skied, you wouldn't have been able to see this thing. Because it's at a lower elevation than the center of the run. Yes. Yes. So, Judge, Your Honors, what I'm saying is that there is a genuine issue of material fact as to whether this was foreseeable. And the foreseeability of this specific danger, you wouldn't know. You couldn't acknowledge this risk unless you were standing on that run looking straight down. Isn't that the point of warning somebody about these things may be out there is that they don't know about it? Isn't that part of the reason that it's in the waiver form? I mean, we typically don't go warning people about things that they already know about. Well, I mean, they warned everybody about trees and the fact that when you ski and you can fall down and hurt yourself. Those are all obvious things. Snow making machine. I think a person, the first time skier. Doesn't really know what those look like. But if it's something that's visible and it's metal, I'm going to stay the heck away from it. In this case, this. Specific danger of a. Snow making machine so close to the run. Invisible from the run itself. I think that that would be a risk that maybe Mr. If he'd been advised of that, this, these types of snow making machines. Protrude pipes. That he, he might say, well, where are these things, you know, how do I, but he'll, he'll do everything he can to avoid it. But it says in the, in the release. Objects, whether marked or unmarked. And whether padded or unpadded, and then it gives a list of various things and it includes snow making equipment. What else needed to be in that waiver form to make it valid. That these snow making machines were located in an area that you might encounter. Acknowledged that. Going off the ski run. Could result in significant injury. Due to these machines that have pipes protruding from them. I mean, there's, I mean, I've never been there, but I'm assuming there's trees at the side of the run. That's correct. I'm just trying to understand what by your rationale would be a valid waiver. And I'm, I'm thinking any tree that isn't visible, is it, is it any item that's not visible from where you are at a given moment? I assume things become more visible as you go down. I'm just having a hard time understanding how this doesn't, you know, this, this exception doesn't need the rule how this. Doesn't eliminate any waiver agreement on a ski run. Well, I think judge that most of the elements that. They listed in their waiver are visible. And people can look at this and appreciate. There's a tree at the on the right side of this run. I just assume not go over there. I'm going over to the left side. There's a piece of rocks, stumps, debris. Natural obstacles, terrain features, guy wires. Poles fences signs, I mean, probably all of it is visible when you're looking at it. But you're suggesting that if it wasn't visible when he started his slide, that somehow that changes it. Well, I don't think he would have been able to see it had he been on the run. Maybe he'd ski down there before and down that hill and he hadn't seen that. What he was trying to do was protect himself from colliding with this little kid. Not knowing that at the side of this run. Was a danger he didn't was never. Aware of that there was some type of machine with pipes protruding from it. He would have right. So to change this, they would have had to put in the waiver. The location of that machine. Yes, or maybe a little paragraph, stressing the fact that there are some of these. Dangers that are not visible from the normal skiing route or run as I call it. So there's three cases that have popped up in our briefing here offered. Massiola, which one is most like this case. Probably Hawkins. This is what the case where the mirror fell off. That that was he he saw the mirror that the fellow working out. He knew that the mirror was there. That waiver was typical and it wave responsibility of the health club for any responsibility whatsoever. Well, that wasn't foreseeable that a mirror would fall on you while you're lifting weights. I think that's the, the most pertinent your honor. In Helweg and. Massiola, the claims were barred by the expo sculptor agreements. And I don't think they were nearly as comprehensive or specific as the waiver agreement here. Well, I, I, I, I give credit to. The defendant, I mean, they, they waived responsibility for everything, everything, including vehicles. I was scratching my head, trying to figure out. They could have driven a car down that hill. And that's apparently a vehicle is just a normal risk. That's the problem with exculpatory clauses is that they don't want responsibility for anything. Any dangerous situation that they've created. Any type of hazard that they've set up. Everybody understands that if you're going to fall down a hill, you're going to hit a snowbank. You're going to go into a bush. There are all kinds of risk inherent in scheme. Going off a run and running and getting impaled. By a snowmaking machine with pipe sticking out of it, not visible from the run. I don't think that's specific danger is. In the waiver agreement, it, it, it, they, they just said, well, yeah, you, you understand what you're doing. There are dangerous and there are risks to be accepted. You're on your own. You hurt yourself. You're on your own. After they list all of these objects that you could possibly run into, they immediately say falls, awkward landings and collisions are also inherent. From variations of, and then list some natural disaster or some natural conditions and then say, you have a personal responsibility to be in control at all times. These risks can be greatly reduced by taking lessons, abiding by your responsibility code and renting or using a helmet. So, what else is it they're supposed to do? You can answer the question. What they were supposed to do. In my opinion, was alert them to dangers that they would not recognize while on that run. They, you can see a tree. And if, if there's snow making equipment and light poles that were down the, down the run on the edge, that's a danger that can be recognized. He can say, I see that. I'm going to assume the risk. I'm going to keep on skiing, but you can't see what they planted off that run. All right, thank you. Counselor. Your time is expired. You'll have time and rebuttal. Now, I'm as a remian. Good morning. Your honors. May it please the court. My name is Laura airman. I represent snow star corporation. Issue before the court today is one of contract interpretation. That is whether the sculptor and provisions and the assumption of risk, labor, liability and indemnification agreement, a plan of sign. Before he went skiing at snow store, snow star are valid and should be enforced of our plaintiff's negligence. Based on the plain language of the agreement. The answer is yes. And this court should affirm the order granting summary judgment to snow star. Here. And this was observed by the honorable Dorothy right at the beginning. That is the contract informs the foreseeability of the risks. And here the language is plain and unambiguous. It is right there in paragraph 3 of the agreement. And it tells the person who is reading it and who's going to go skiing that everyone. I snow star property may encounter risks, which may include, but are not limited to collisions with others, whether participants or not. Or without us, whether marked or unmarked and whether padded or run padded, such as, and then it provides a list of of those objects that one may encounter. And it's not an exclusive list, but it is a list. It doesn't it doesn't say visible or not visible. And that's really what plaintiff's position is. Is that the, the snowmaking machine was not visible to him until he was sort of upon it. That is the plaintiff's position and the plaintiff did testify. That the, the, the snowmaking machine was not noticeable. It's not marked. It wasn't something that made it stand out. But there's nothing in this agreement. That when construing the language as a whole. And according to it's plain and ordinary meaning. That would tell the person who's reading it. That all of the objects listed. Would be visible as your honor observed. There is no reason to warn someone about an object that they can see. And indeed, if you look at the language as a whole. Here, it, it actually suggests that there are risks. That one may not be able to see or that there's condition that a sphere may encounter. That would render an object that would notice would ordinarily be visible. Invisible, for example, your honor in sentence 2 of paragraph 3 of the agreement. And it indicates that falls, awkward landings and collisions are also inherent from weather conditions. There can be snow that could obscure the view of a sphere. Therefore, obscuring the view of certain objects. There is situations where I imagine that a collision with another sphere. Which plaintiff acknowledges is an inherent risk of skiing that he assumed. That would be a situation that you could run into a sphere that you may not see. A collision could occur. Perhaps someone glides into you from behind. The point is that Illinois law doesn't require. That snow star. Warn of every specific potential risk or injury. Only that it's advised plant of the potential range of dangers that I could encounter. While the scheme there. And that's exactly and I would think that, you know, you'd be on such solid ground and I'm scary. Which again, I've never used, but I've driven by him. There's usually trees on each side. And so if you said, hey, you're, you're waving this, you know, that you could, you know, that you could collide with a tree. But if a skier rounds the bend. And there's a big tree in the middle of the run 1 tree. Do you think that was foreseeable? Do you think that's what people would understand there? They are. Giving up their, their protections for because I think that's analogous to him saying, yeah, sure. I get it. There may be snow equipment, but not on the run. I think I understand what your honor is asking. And whether something is foreseeable is informed by matters of common sense and by the plain language of the agreement. And if we are going to talk about common sense, I think your honor has a point about a giant tree in the middle of a ski run. And take that to the other side, which is. That would be reasonable and foreseeable that the equipment to make snow. On a hill here, Illinois, I'm like, perhaps maybe in Colorado is going to be located off the run, but near it. And using that kind of common sense and reasonably interpreting the agreement in that manner, which is what this court does under the rules of contract instruction. It is reasonably foreseeable here. I think. Plaintiff is nitpicking between what for what is foreseeable and what is visible. Foreseeable is a situation as to whether the risk can be reasonably anticipated. Not whether the plaintiff knows that that risk is right there. And here, plain language of the agreement says you may encounter these risks. And that these risks may not be marked. They may not be padded. And. The agreement actually simply warrants of the range of injuries that can occur as a result of one of these risks happening and plaintiff's counsel. Indicated that the agreement would be appropriate if it if it says that going off the run result in significant injury. Now, the agreement doesn't say that going off the run would result in significant injury, but a reasonable person just looking out. Over the 25 acres snow star and seeing all of the runs and all of the objects that are around the runs would assume that that's exactly what would happen. Because all the objects it warns about are typically located off to the sides of the run. You can see visibly when you are seeing and the agreement tells you. That you run into any of those objects, you collide with them, you could experience significant injuries and a lot of those injuries that are listed were unfortunately injuries that plaintiff experienced here. So, you cited Harris versus Walker and Supreme Court's decision. In which they gave a great deal of weight to the plaintiff's experience in deciding that he could have foreseen an injury that that arose in his case. Does that by negative implications say that we should say, well, it's less foreseeable to this novice skier than it might have been in some other situation. No, your honor. In Harris, the exculpatory clause, if you will, was one sentence, which was essentially riding your own risk. And the experience of the plaintiff in that case suggests that he knew that there was risks that came with horseback riding just because of the experience many years that he had horseback riding. In this case, the detail of the exculpatory agreement is aimed at novice skiers. Like the plaintiff, he does list these things because a novice skier may not know that these things are something that they will encounter. And plaintiff's counsel referenced, I think he described the agreement as throwing everything in the kitchen sink. Well, to warn novice skiers that these are things that may be encountered. And I would point out that these are objects that one would reasonably anticipate would be found on a ski run. If it said basketball hoop, I might agree with plaintiff's counsel. But it says there may be signs that tell you which way to go. There may be snowmaking equipment. And plaintiff's counsel indicated that, boy, did plaintiff even know what that looked like? Well, plaintiff didn't say he didn't know what it looked like. Plaintiff never testified that he didn't understand what the agreement said. And whether plaintiff knew exactly what snowmaking equipment was, one could reasonably assume, given it's the plain meaning, is something that you don't want to run into. And I would also point out that the agreement also warns of conditions that can change. So, for example, it references vehicles. Well, vehicles move around. Debris moves around. The slope conditions, whether there's black ice, I believe is referenced, or moguls, these conditions can change. And the standard that plaintiff is advocating for is that Snowstar has to identify where all of these things are. That is simply an unworkable standard that is not the law in Illinois. What about the holding and offer that the injury wasn't foreseeable because it didn't happen in the way the parties foresaw? Does that give us any insight here? No, I don't think so. That, in offer, the injury occurred because of some condensation, or at least it was alleged condensation was coming from the roof. And that's not something that, you know, one would normally anticipate one would encounter when using a gym. And I think the court in that case referenced, well, you may encounter, you know, subsequent injuries. Substances in the force of perspiration, they were in a basketball court, or perhaps in spilling a drink, some Gatorade. But encountering condensation, it's a little bit too far afield from what one anticipates is going to happen in a gym. And for that reason, I mean, that's why it's distinguishable here. Because one would anticipate that the objects and the type of risks that are delineated in the agreement, something that are reasonably related to the activities that plaintiff would be engaging in at Snowstar. Sorry, Your Honor, I've gone through a lot of my notes, if I can just catch up here. I would mention the Helwig case. I believe Your Honor asked plaintiff, you know, which case would be most analogous and one was Helwig. And I think that that is the case that is most analogous to Helwig. Particularly with regard to the construction of the exculpatory agreement. In that case, the plaintiff was engaging in a bicycle race in a city, supposed to be a closed course. He collided with a non-participant bicyclist, causing him injury. And plaintiff alleged that colliding with a non-participant bicyclist is not foreseeable and the court disagreed. And the court said, well, even if colliding with a non-participant bicyclist was unforeseeable, it doesn't matter. Because plaintiff assumed the risk by agreeing to absolve the defendant of liability for, and I quote, collision with pedestrians, vehicles, other riders, and fixed and moving objects. That was the language used in the agreement. And here, not only is it reasonably foreseeable that a person could collide with a snowmaking machine, particularly here in Illinois, given the amount of snow that we get as compared to maybe other ski resorts. Not only is it reasonably foreseeable, but it was actually written in the agreement. And in that agreement, the plaintiff agreed to assume the risk-inherent scheme and assume liability and release no star from any liability as a result of any injuries that may occur while skiing there. You mentioned that some obstructions are movable, right, like the vehicle and debris and so forth. My assumption is that, and I don't know if the record tells us, that these snow machines generally are not, that they generally would be where they are placed. If that's the case, wouldn't it be reasonable to require the waiver agreement to disclose their locations? At first, the record does disclose that the snowmaking machines are both movable and immovable. There are fixed snowmaking machines and there are ones that are not. This one was fixed. So let's just assume they're all fixed. Well, in this case, the design of the slope, by making it come up a little bit and from the edge, that's what I believe counsel is describing with that five-feet difference, that slope design is what obstructed the view according to plaintiff's testimony. So in that sense, the next day, maybe the slope is designed differently. Because they do that by moving the snow. Build the snow up, at least according to Mr. Benhart. That's the testimony that I'm referring to or getting this from. Build that snow up. It may not be the case later on. Snowfall can happen. Slope design changes. So in that sense, it would not be reasonable. Also, Mr. Benhart explained that Snowstar is acquiring new snow machines all the time. Many, many, many over the years that he was a ski patroller there. And Snowstar is 25 acres. 25 acres. So to have to describe where every snowmaking machine is would just be unworkable. And if Snowstar and if the law would require Snowstar to have to give the location of every snowmaking machine, at least a slippery slope of whether then Snowstar has to describe where every immovable object can be found. And frankly, that would be very difficult to do for 25 acres. And I don't know that it would be very helpful to someone reading that would actually be able to remember the location of all of these things. And that is why Snowstar warns in its release that these things may be encountered. They may be marked or they may not be. And so plaintiff is assuming that risk. But Snowstar also tells plaintiff here that he can mitigate that risk. He can mitigate that risk by taking lessons, by wearing a helmet. They tell me I can mitigate the risk of hitting my golf ball out in the street by taking lessons, but I haven't yet found that to be necessarily very reliable. I mean, people have to start somewhere. I think somebody on a ski slope for the first time is going to have a harder time controlling their movement. I agree, your honor. It's not the benefit of taking a lesson is not that just improve your skill. Perhaps you will be given more information. Learn a little bit more about your surroundings and about skiing in general, right? Especially if you're a novice. I think we all are here. In fact, I've never skied. And may learn evasive techniques. What do you do when you encounter a child coming across your path? I think that plaintiff's counsel said, well, you know, perhaps plaintiff would have slalomed around the child. Well, I think you said a more experienced skier would have. Yeah, excuse me. You are right. I apologize. I apologize. I didn't mean to misrepresent that. Yes, a more experienced person. But maybe there's another evasive technique that could have been taught that you've learned there. Or perhaps after taking a ski lesson, you may have learned, you know what? There is no way to do that. I actually have to be more experienced. And maybe I don't want to take on these risks after all. And there's nothing that said that plaintiff did have to sign this waiver. He could have just not gone skiing. Wouldn't have been very fun. But there was nothing compelling him to sign the waiver and go skiing. And that and by reading the agreement, which he did, he said he did. He knew these things and he had the choice and he chose to go skiing. I see that I'm almost out of time. If you have any questions, I'd be happy to answer them. Otherwise, I'll just wrap up.  Thank you for your time. Snowstar would respectfully request that this court affirm the order granting summary judgment in its favor. Thank you. All right. Thank you, Mr. McGillis. Your Honor, I think at one point I agreed with Snowstar. The counsel indicated that when you're at the top of the hill, you can see all the risks. You can see the trees. You can see the black ice and moguls and what all these terms. I don't really understand, but you can see them all. You get on the top of this hill. You can't see that piece of snowmaking equipment. Now, counsel described for you, but I don't think she fully understands. It goes down, but there's a drop off that runs the whole length of the run. It drops down 5 or 10 feet. You go 10 feet off the run, and then there's a drop off. It just goes down all the way down on both sides. And that is where this piece of equipment was. You can't see it unless you're on top of it. And unfortunately, that's where he ended up. But if he had the same occurrence, and he went off the side and hit a tree and injured himself, is there really even an argument? No. At that point, he's... But you can see the tree. But you can't control your path. I mean, that's his whole point is he was out of control, as Justice Jarmon asked earlier on. If he's out of control, what difference does it make what's off the path? Well, for a 20-year-old athlete, if he's sliding down that hill, and he knows there's a machine down there with pipes protruding from it that are going to impale him, if he doesn't change that course, you know he'd be fighting and trying to roll. I imagine that as he's going down that hill, he says, well, I'm going to end up in the snow bank, I'm probably going to end up in a bush, maybe even bounce off a tree. But God, if he knew, if he was aware that there was that dangerous piece of machinery there, he'd have been fighting for his life. You're slicing it pretty thin. Tree's pretty hard too. Yeah, I would agree with that. Like you, Judge, a lot of thought falls off those trees. Counsel, this wasn't his first run either, was it? No, he'd gone down. It was his fourth run. But not on this hill. He'd been on the other hill. He'd gone down four runs, so he knew that there are things on each side of the run, correct? I don't know what the other hills look like. We never discussed that. Okay. And the only thing that is really at issue is his decision to not hit the kit. Is that something that wasn't foreseeable under the terms of the contract? No, that was foreseeable, Judge. It's foreseeable that there are times where you're going to come close to other skiers and snowboarders. After that, it's just a matter of he went where he went because he wasn't in control of anything from that point on. Well, I believe that if he knew that this hazard was down... That's not an issue of the clause itself. You're talking now about changing the facts, but that's not what we have to deal with. We have to deal with whether the exculpatory clause is legally sufficient. Yes. And part of that consideration is whether this particular type of incident was foreseeable. That somebody could go merely a few feet off the run and be confronted with a huge piece of machinery with pipes protruding from it that was not visible from the hill itself. That the foreseeable issue is a question of fact. Now, counsel and I can disagree, but the question of fact is for a jury. They may say, no, that's foreseeable. You should have realized that there's a junkyard on the side of that hill. Other people might say, wow, give his kid a chance. Let him avoid this danger. The snow equipment, like counsel pointed out, it was all visible from the top of the hill except this one. All right. Thank you, counsel. Thank you, your honor. We will take the matter under advisement and the full panel will issue a decision in due course.